Brewster Jamieson, ABA No. 8411122
Katie Smith Matison, *pro hac vice*
LANE POWELL PC
1600 A Street Suite 304
Anchorage, Alaska 99501-5148
Telephone: (907) 277-9511
(206) 223-7029
Email: jamiesonb@lanepowell.com
matisonk@lanepowell.com
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SYNDICATES 1183, 1036, and 2007, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON subscribing to Charterer's Legal Liability Policy Number GU300630J,<br><br>Plaintiffs,<br><br>v.<br><br>FURIE OPERATING ALASKA, LLC; TERESA S. HANGER, IN HER CAPACITY AS THE TRUSTEE IN BANKRUPTCY FOR THE REORGANIZED DEBTOR FURIE OPERATING ALASKA, LLC; COOK INLET SPILL PREVENTION AND RESPONSE, INC.; CISPRI SERVICES; LLC, BERKLEY NATIONAL INSURANCE COMPANY; GEMINI INSURANCE COMPANY,<br><br>Defendants. | **In Admiralty**<br><br>Case No. 3:21-cv-00252-JMK<br><br><br><br>**COMPLAINT FOR <u>DECLARATORY JUDGMENT</u>** |

COME NOW the Plaintiffs, Syndicates 1183, 136, and 2007, Certain Underwriters at Lloyd's, London subscribing to the Charterer's Legal Liability Policy Number GU300630J (the "CLL Policy") insuring Furie Operating Alaska, LLC ("Furie"), by and through their counsel of record, seeking an adjudication for Declaratory Judgment that there is no coverage under the CLL Policy for indemnity, contribution, or equitable contribution for any claims of Defendants, and respectfully plead and allege as follows:

# I. **THE PARTIES**

1.      Plaintiffs Syndicates 1183, 136, and 2007 are insurance syndicates transacting the business of insurance at Lloyd's, London (collectively "Underwriters" or "Plaintiffs"), and are the subscribing syndicates to the Charterers' Legal Liability Policy Number GU300630J, naming Furie Operating Alaska, LLC as the Named Insured. Syndicates 1183, 136, and 2007 are managed by Lloyd's, London managing agents in London.

2.      Upon information and belief, Defendant Furie Operating Alaska, LLC ("Furie") is a Delaware corporation with its principal place of business located at 188 W. Northern Lights Blvd., Suite 620, Anchorage, Alaska 99503, and is the Named Insured under the Charterers' Legal Liability Policy subscribed by Underwriters. Furie has been joined as the Named Insured and as an indispensable party to allow the Court to provide complete relief in this case.

3.      Upon information and belief, Defendant Clingman & Hanger Management Associates, LLC is the duly appointed Trustee for the Litigation Trust established by Furie's Chapter 11 plan confirmed by Order dated June 12, 2020 entered by the United States Bankruptcy Court for the District of Delaware, Cause No. 19-11781 (LSS), and is joined herein solely in its capacity as the Trustee (the "Trustee"). The Trustee was incorporated in Virginia and its principal place of business is 880 Technology Park Drive, Glen Allen, VA 23059. The Trustee was joined as an indispensable party to allow the Court to provide complete relief in this case.

4.      Upon information and belief, Defendant Cook Inlet Spill Prevention and Response, Inc. ("CISPRI") is an Alaska corporation with its principal place of business located at 51377 Kenai Spur Hwy, Kenai, Alaska 99611.

5.      Upon information and belief, Defendant CISPRI Services LLC is an Alaska corporation with its principal place of business located at 51377 Kenai Spur Hwy, Kenai, Alaska 99611. Upon information and belief, CISPRI Services LLC and CISPRI (collectively, "CISPRI") are owned by the same members and shared employees. At all

Complaint for Declaratory Judgement
*Syndicates 1183, 1036, and 2007, et al. v. Furie, et al.* (Case No. 3:21-cv-00252-JMK)          Page 2 of 28

Case 3:21-cv-00252-JMK   Document 1   Filed 11/17/21   Page 2 of 28

times herein, CISPRI Services LLC was the owner and operator of the vessel OSV PERSEVERANCE, Coast Guard Official No. 580853.

6.     Upon information and belief, Defendant Berkley National Insurance Company ("Berkley") is an Iowa corporation transacting the business of insurance with its principal place of business located at 11201 Douglas Avenue, Urbandale, Iowa 50322.

7.     Upon information and belief, Defendant Gemini Insurance Company ("Gemini") is a Delaware corporation transacting the business of insurance, and is a subsidiary of W.R. Berkley Corporation.  Gemini's principal place of business is 7233 East Butherus Drive, Scottsdale, AZ 85260.

## II. <u>JURISDICTION AND VENUE</u>

8.     This is an action for declaratory relief pursuant to Title 28 of the United States Code, § 2201 *et seq*, in that a present case or controversy exists between the parties in this case concerning Underwriters' obligations with regard to the marine insurance CLL Policy.  Underwriters seek an adjudication by this Court determining whether coverage exists under the CLL Policy for an Arbitration Award against the Named Insured, Furie.

9.     This is an admiralty and maritime case within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and this Court has jurisdiction pursuant to Title 28 U.S.C. §1333.

10.     Venue is proper in the District of Alaska as this cause arises out of the marine insurance CLL Policy delivered by Underwriters to the Named Insured Defendant Furie, whose principal place of business is located in Anchorage, Alaska.  The underlying occurrence involved in the disputed coverage of the CLL Policy is alleged to have occurred in Cook Inlet, Alaska, which is within the judicial district of the United States District Court for the District of Alaska.  Venue is also proper because Defendants CISPRI are seeking to confirm an Arbitration Award against Furie, which is the subject of disputed coverage under the CLL Policy, in the United States District Court for the District of Alaska, Cause No. 3.21-cv-00194-SLG.

Complaint for Declaratory Judgement
*Syndicates 1183, 1036, and 2007, et al. v. Furie, et al.* (Case No. 3:21-cv-00252-JMK)     Page 3 of 28

Case 3:21-cv-00252-JMK   Document 1   Filed 11/17/21   Page 3 of 28

### III.  FACTUAL ALLEGATIONS

**A.  Furie Owned and Operated the Julius R. Platform.**

11.    Furie owned and operated an offshore natural gas production platform, the Julius R. Platform (the "Platform") located in Cook Inlet, Alaska. The Platform was attached to the seabed of Cook Inlet by a single support column.  At all relevant times herein, the Platform was a fixed structure and did not constitute a vessel as defined in 1 U.S.C. §3.



12.    The Platform installation was completed in September 2015.  Furie commenced the production of natural gas at the Platform on or about November 2015.

13.    At all relevant times, the Platform was Furie's only production Platform.

14.    The Platform was equipped with an 18-foot wire rope Mooring Apparatus, one end of which was attached to the Platform's caisson to allow vessels to tie up and moor to the Platform.

15.    At all relevant times herein, Furie was a member of CISPRI.

Complaint for Declaratory Judgement
*Syndicates 1183, 1036, and 2007, et al. v. Furie, et al.* (Case No. 3:21-cv-00252-JMK)                    Page 4 of 28

Case 3:21-cv-00252-JMK   Document 1   Filed 11/17/21   Page 4 of 28

**B.** **CISPRI Owned, Operated, and Manned the OSV PERSEVERANCE.**

16.    CISPRI is a spill response organization.

17.    CISPRI Services owned the vessel OSV PERSEVERANCE, an offshore supply vessel which operated in Cook Inlet, Alaska.

18.    OSV PERSEVERANCE, Coast Guard Official Number 580853, is 207 feet in length, with a 40 foot beam, and a depth of 17 feet.  OSV PERSEVERANCE is classed with the American Bureau of Shipping.  The OSV PERSEVERANCE was initially constructed in 1977 and was rebuilt in 1997.

19.    OSV PERSEVERANCE is a spill response vessel operated by CISPRI.

20.    At all relevant times herein, CISPRI employed a licensed captain, officers, and crew to man and operate the OSV PERSEVERANCE in the territorial waters of Alaska and the navigable waters of the United States.

**C.** **The Time Charter.**

21.    On or about January 4, 2016, Furie entered into the "**CISPRI Services Uniform Time Charter Party for Off-Shore Supply and Support Services**" together with certain specified portions of a "**Spot Charter Agreement**" and of a "**PERSEVERANCE Spot Charter Agreement**." (collectively the "Time Charter") with CISPRI for the use of the OSV PERSEVERANCE.

22.    On information and belief, CISPRI and its agents drafted the Time Charter on a CISPRI printed form.

23.    The Time Charter was a maritime contract for the use of the vessel OSV PERSEVERANCE to provide off-shore supply and support services for Furie in the Cook Inlet.

24.    A true and correct copy of the Time Charter is attached as Exhibit 1 and is incorporated by reference.

25.    The terms and conditions of the Time Charterer, as well as the rights and duties of CISPRI, as "Owner" and Furie as "Charterer" are governed by well-established federal general maritime law.

Complaint for Declaratory Judgement
*Syndicates 1183, 1036, and 2007, et al. v. Furie, et al.* (Case No. 3:21-cv-00252-JMK)          Page 5 of 28

Case 3:21-cv-00252-JMK   Document 1   Filed 11/17/21   Page 5 of 28

26.     The **Area of Operation** specified in Section 3 of the Time Charter provided that CISPRI and Furie agreed that the OSV PERSEVERANCE would operate only between points in Alaska in the Cook Inlet.

27.     The Time Charter in **Section 5 Owner to Provide** obligated CISPRI to provide the Master, Officers, and crew of the OSV PERSEVERANCE and to pay all wages and expenses of the crew.

28.     The Time Charter in **Section 5 Owner to Provide** provided that CISPRI was obligated to pay for and maintain all insurance on the Vessel, all maintenance and repair of the vessel hull, machinery and equipment, during the term and performance of the Time Charter.

29.     **Section 10 Liabilities and Indemnities (a) OWNER** of the Time Charter provided that CISPRI, as the OWNER, would indemnify Furie for the death or injury to CISPRI's employees arising out of or in any way connected with the performance of the Time Charter, as follows:

(a)     OWNER. Notwithstanding anything else contained in this Charter excepting Clauses 6 (b) and (e) 7, 8(d)(iii), 10(d), 11, 16 and 17, the **CHARTERER shall not be responsible for injury or death of any of the OWNER'S employees**, port agents, contractors, subcontractors, and vendors, agents, officers, or invitees **arising out of or in any way connected with the performance of this Charter**, unless such injury or death is caused by the negligence, gross negligence, or willful misconduct of the CHARTERER, and the OWNER shall indemnify, protect, defend and hold harmless the CHARTERER from any and against all claims, costs, expenses, actions, proceedings, suits, demands, and liabilities whatsoever arising out of or in connection with such injury or death, unless caused by the negligence, gross negligence or willful misconduct of the CHARTERER.

[emphasis added].

30.     **Section 10 Liabilities and Indemnities (b)** of the Time Charter provided that Furie, as the Charterer, must indemnify CISPRI for personal injuries of Furie's agents, employees, contractors, subcontractors, or vendors, arising out of the performance of the Time Charter, as follows:

(b)     CHARTERER.  Notwithstanding anything else contained in this Charter

Complaint for Declaratory Judgement
*Syndicates 1183, 1036, and 2007, et al. v. Furie, et al.* (Case No. 3:21-cv-00252-JMK)          Page 6 of 28

Case 3:21-cv-00252-JMK   Document 1   Filed 11/17/21   Page 6 of 28

excepting Clauses 12 and 16, the OWNER and its Members shall not be responsible for loss of, damage to, or any liability arising out of anything towed by the Vessel, any cargo laden upon or carried by the Vessel or her tow, the property of the CHARTERER, whether owned or chartered, including its Offshore Units, or for **injury or death of any of CHARTERER'S employees, port agents, contractors, subcontractors and vendors, agents, officers or invitees, or anyone on board anything towed by the Vessel, arising out of or in any way connected with the performance of this Charter**, unless such loss, damage, liability, injury or death is caused by the gross negligence or willful misconduct of the OWNER and its Members from any and against all claims, costs, expenses, actions, proceedings, suits, demands, and liabilities whatsoever arising out of or in connection with such loss, damage, liability, personal injury or death unless caused by the gross negligence or willful misconduct of the OWNER.

[emphasis added].

31.     **Section 13 (a) Insurance** of the Time Charter required CISPRI, as the OWNER,  to procure and maintain the following insurance coverage for the entire term of the Time Charter including: Hull and Machinery Insurance; **Protection & Indemnity Insurance on a Form SP-23**; Vessel Pollution Liability Coverage; Commercial General Liability Insurance; Workers Compensation Insurance; and Umbrella or Bumbershoot liability insurance.

32.     On information and belief, CISPRI's Protection & Indemnity Insurance provided coverage to CISPRI for the personal injury or death of the Captain, Officers, or crew aboard the OSV PERSEVERANCE during the term of the Time Charter.

33.     **Section 13 (b) Insurance** of the Time Charter required Furie as the Charterer, to maintain the following insurance coverage throughout the duration of the Time Charter:

(b) <u>**Charterer,**</u> **shall, at its sole expense,** procure and maintain such of the following insurances for the duration of the charter term:

* * *

2.     **full form charterer's legal liability insurance, specifically extended to insure, Charterer's obligations under this charter**, with minimum limits of $1 million per occurrence; and

Complaint for Declaratory Judgement
*Syndicates 1183, 1036, and 2007, et al. v. Furie, et al.* (Case No. 3:21-cv-00252-JMK)          Page 7 of 28

Case 3:21-cv-00252-JMK   Document 1   Filed 11/17/21   Page 7 of 28

* * *

4.     **Umbrella or Bumbershoot liability excess of the charterer's legal liability**, cargo, Workers Compensation and Marine Employers Liability in the amount of $4 million.

[emphasis added].

34.     The Time Charter required Furie to obtain charterer's legal liability insurance to cover Furie's liabilities as Charterer of the OSV PERSEVERANCE.

35.     The Platform was not mentioned in or governed by the Time Charter because the Platform is not a vessel as defined by 1 U.S.C. § 3.

36.     The Time Charter in Section **24. Dispute Resolution (a)** provided that the Time Charter should be governed by the General Maritime Law of the United States.

37.     Section **24. Dispute Resolution (a)** of the Time Charter further provided that all disputes between CISPRI as the Owner and Furie as the Charterer arising out of the Time Charter should be referred to arbitration in Anchorage.  The Time Charter provided that a sole arbitrator jointly selected by CISPRI and Furie should conduct the arbitration in accord with the rules of the Society of Maritime Arbitrators, Inc. ("SAM").

38.     Section **24. Dispute Resolution (a)** of the Time Charter further provided that an award could include costs and attorneys fees and that the judgment could be entered in a court of competent jurisdiction.

### D.     Furie Procures a Charterer's Legal Liability Policy to Insure its Liabilities as the Charterer of the OSV PERSEVERANCE.

39.     Underwriters subscribed to Charterers' Legal Liability Policy Number GU300630J, naming Furie Operating Alaska, LLC and affiliated parents and subsidiaries as the Named Assured.  The Policy incepted on April 11, 2015 and terminated on April 11, 2016 (the " CLL Policy"). The CLL Policy is a *pay to be paid* or an indemnity only policy. A true and correct copy of the Policy is attached hereto as "Exhibit 2" and is incorporated by reference.

40.     The CLL Policy provides for the following relevant "Coverage":

Subject to the conditions, exclusions, warranties, definitions and limitations of this insurance underwriters **shall indemnify the Assured** up to a limit of

Complaint for Declaratory Judgement
*Syndicates 1183, 1036, and 2007, et al. v. Furie, et al.* (Case No. 3:21-cv-00252-JMK)          Page 8 of 28

Case 3:21-cv-00252-JMK   Document 1   Filed 11/17/21   Page 8 of 28

as per Policy Declarations any one loss or series of losses arising out of an Accident all coverages combined in respect of:

> (a)    their legal and/or contractual liabilities to third parties, owners and/or disponent owners of the Chartered Vessel which are covered in the United Kingdom Mutual Assurance Association (Bermuda) Ltd. standard form of certificate and/or under their club rules for charterers' risks published and in effect at the inception of this insurance, but subject always to the limit of this insurance and further, Underwriters retain all rights reserved by the Association in the said certificate and/or their club rules.

41.    The CLL Policy incorporates coverage provided for in the United Kingdom Mutual Assurance Association (Bermuda) Ltd. ("UKB") rules in effect at the inception of the CLL Policy. The CLL Policy incorporates the UK P&I Club Contacts & Rules of 2015 (the "2015 P&I Rules"), which were in effect at the inception of the CLL Policy. A true and correct copy of the 2015 P&I Rules are contained in "Exhibit 2" and incorporated by reference.

42.    Rule 4, Section 1 of the 2015 P&I Rules addresses coverage to charterers. It provides in relevant part that:

> Where the entry of a ship in the Association is in the name of or on behalf of a charterer, the following liabilities, losses, costs and expenses may be covered on such terms and conditions as may be agreed by the Managers in writing:
>
> A.    **Liability of the charterer, together with costs and expenses Incidental thereto, to indemnify the owner or disponent owner of the entered ship in respect of the risks set out in Rule 2.**

[emphasis added].

43.    The 2015 P&I Rules also incorporate by reference the 2015 "Charterer's Addendum," which contains "the full texts of cover provided under Rule 4, Section 1." The 2015 Addendum provides that:

> This insurance **covers the liability of the above-named Member *in his***

Complaint for Declaratory Judgement
*Syndicates 1183, 1036, and 2007, et al. v. Furie, et al.* (Case No. 3:21-cv-00252-JMK)    Page 9 of 28

Case 3:21-cv-00252-JMK   Document 1   Filed 11/17/21   Page 9 of 28

**capacity as charterer** in respect of risks set out in Rule 2 and includes, pursuant to Rule 4 Section 1(A), **the liability of the charterer to indemnify the owner or disponent owner in respect of such risks, to the extent that they arise out of operations or activities ordinarily carried on by, or ordinarily at the risk and responsibility of, a charterer**.

[emphasis added]. A true and correct copy of the Charters' Addendum is contained within "Exhibit 2" and incorporated by reference.

44.    Rule 2, Section 3 provides in relevant part:

**Illness and death of seamen**

Liability to pay damages or compensation for illness and death resulting from illness of any seaman, and hospital, medical, funeral or other expenses necessarily incurred in relation to such illness or such death including expenses of repatriating the seaman and sending abroad a substitute to replace him.

45.    The express terms and conditions of the CLL Policy and the incorporated 2015 P&I Rules insured Furie for injuries to CISPRI's seamen only to the extent that that Furie's liability arose out of Furie's status as a charterer under the Time Charter.

46.    The express terms and conditions of the CLL Policy did not provide coverage to Furie for its liabilities as the owner and operator of the Platform.

47.    The CLL Policy contained the following exclusions:

**3. Exclusions**

Notwithstanding anything to the contrary herein, it is expressly understood and agreed that this insurance **shall exclude** the following:

(a)    **Contractual or assumed liabilities other than those of the Assured's liabilities as charterer which are established by the specimen charter party and rider clauses or under any bill of lading issued pursuant to the said charter party as seen and approved by the Underwriters hereon.**

Any enhancement of, or addition to these liabilities which may fall upon the Assured through employment of alternative/additional charter parties or rider clauses will not be

Complaint for Declaratory Judgement
*Syndicates 1183, 1036, and 2007, et al. v. Furie, et al.* (Case No. 3:21-cv-00252-JMK)                Page 10 of 28

Case 3:21-cv-00252-JMK   Document 1   Filed 11/17/21   Page 10 of 28

covered hereunder unless and until specifically accepted by Underwriters hereon.

* * *

    (c)    The insolvency, bankruptcy, receivership, financial default or any refusal or inability to pay of the Assured and/or any insurer and/or any Underwriter shall not operate to increase Underwriters' liability under this insurance or to increase any Underwriters' share of liability under this insurance. **In no event shall any Underwriter of this insurance assume the responsibilities and/or obligations of the Assured and/or any insurer and/or any Underwriter.**

[emphasis added].

48.    The terms and conditions of the CLL Policy are clear that Underwriters agreed to insure Furie solely for its liabilities arising out of the Time Charter.

49.    The CLL Policy also contains the following "other insurance" provision:

In the event of an Accident giving rise to a claim which is, or but for the existence of this insurance, would be covered under any other contract of indemnity or insurance inuring to the benefit of the Assured, the insurance afforded by this Policy shall be in excess of the amount which would be recoverable under such other indemnity or insurance had this insurance not been effected, but only to the extent that the excess amount is covered by this insurance.

### E.    <u>CISPRI's Crewmember is Injured.</u>

50.    On or about January 8, 2016, an OSV PERSEVERANCE crewmember "EH" was injured when the crew attempted to attach the OSV PERSEVERANCE to the Platform by using the Platform mooring apparatus consisting of a wire rope sling Mooring Apparatus (the "Mooring Apparatus").

51.    Furie owned the Mooring Apparatus which was affixed as Platform equipment on the Platform to enable vessels to tie up to the Platform.

52.    At all relevant times the OSV PERSEVERANCE was under the exclusive control of the vessel captain, officers, and crew while the vessel crew attempted to use the Platform Mooring Apparatus to attach the OSV PERSEVERANCE to the Platform at the

Complaint for Declaratory Judgement
*Syndicates 1183, 1036, and 2007, et al. v. Furie, et al.* (Case No. 3:21-cv-00252-JMK)    Page 11 of 28

Case 3:21-cv-00252-JMK   Document 1   Filed 11/17/21   Page 11 of 28

time of EH's injury.

53.　　On information and belief EH attached the OSV PERSEVERANCE's bow mooring gear to the Platform's Mooring Apparatus.  The Mooring Apparatus parted under strain striking EH who was aboard the OSV PERSEVERANCE.

54.　　CISPRI attended mediation with its crewmember EH in December 2017. CISPRI unilaterally settled all claims asserted by EH in a confidential settlement with EH.

55.　　On information and belief, the injury to EH that occurred while EH was serving aboard the OSV PERSEVERANCE was covered by CISPRI's Protection & Indemnity liability Policy ("CISPRI P&I Policy").

56.　　On information and belief, CISPRI's P&I insurer indemnified CISPRI for the settlement or alternatively paid or contributed to the personal injury settlement during mediation  between CISPRI and EH.

57.　　CISPRI asserted a demand for indemnity against Furie for CISPRI's settlement with EH.

58.　　CISPRI asserts that Furie is liable for the injury to EH that allegedly arose out of the Time Charter, and must indemnify CISPRI.

### F.　　Underwriters Reserved Their Rights Under the CLL Policy.

59.　　Furie asserted a claim under the CLL Policy, seeking indemnity from Underwriters to satisfy CISPRI's claim for indemnity arising under the Time Charter.

60.　　The CLL Policy is an indemnity only—*pay to be paid*  Policy.

61.　　Underwriters had no duty under the CLL Policy to provide a defense, pay attorneys' fees, or legal costs on behalf of Furie against CISPRI's claims.

62.　　On September 8, 2020,  Underwriters' general Reservation of Rights was sent to the Trustee in the United States Bankruptcy Court, in Delaware.

63.　　Underwriters' Reservation of Rights letter explained to the Trustee  that the CLL Policy is an indemnity only policy.  Underwriters reserved their rights to limit or deny coverage under the terms and conditions of the CLL Policy for  any Arbitration Award against Furie.

Complaint for Declaratory Judgement
*Syndicates 1183, 1036, and 2007, et al. v. Furie, et al.* (Case No. 3:21-cv-00252-JMK)　　　　　Page 12 of 28

Case 3:21-cv-00252-JMK   Document 1   Filed 11/17/21   Page 12 of 28

64. The Reservation of Rights letter attached a copy of a September 8, 2020 letter from counsel for Berkley National Insurance Company, who issued a primary Energy Commercial Liability Policy to Furie covering its operations. The Reservation of Rights contained a copy of the Time Charter, Spot Charter Agreement, and the Stipulation of Contractual Arrangement.

65. Underwriters reserved their rights to deny Furie's claim for coverage and indemnity under the CLL Policy on the basis that CISPRI's demand and confidential settlement with EH did not arise out of Furie's charterer's liability for the OSV PERSEVERANCE.

66. Underwriters reserved their rights that there was no coverage under the CLL Policy because the personal injury to EH arose out of Furie's liability as the owner and operator of the Platform.

67. The Platform, which was affixed to the seabed, is not a vessel and is not controlled by maritime law. Federal general maritime law is clear that any and all workers on the Platform engaged in the business of gas exploration and production were not maritime workers.

68. Underwriters' Reservation of Rights was legally correct and proper because there was no coverage under the CLL Policy for Furie's liability as the Platform owner.

69. The CLL Policy provided coverage only for Furie's liability as the Charterer of the OSV PERSEVERANCE.

70. Underwriters have no duty to indemnify Furie under the CLL Policy for any claims arising out of Furie's liabilities for the negligent operation of the Platform or the defective Mooring Apparatus resulting in an injury to EH.

71. On August 24, 2021, a second Reservation of Rights letter was sent to Defendant Trustee after the Arbitration Award was entered. In that letter, the Trustee was advised that (i) Underwriters had no duty under the CLL Policy to indemnify Furie, and (ii) that Underwriters reserved their rights to provide a more detailed coverage analysis of Furie's claim under the CLL Policy.

Complaint for Declaratory Judgement
*Syndicates 1183, 1036, and 2007, et al. v. Furie, et al.* (Case No. 3:21-cv-00252-JMK)          Page 13 of 28

Case 3:21-cv-00252-JMK   Document 1   Filed 11/17/21   Page 13 of 28

### G. The Arbitration.

72.     In June 2018, CISPRI demanded that Furie arbitrate their respective liabilities for the EH personal injury settlement pursuant to the arbitration provision contained in **24. Dispute Resolution (a)** of the Time Charter.

73.     CISPRI and Furie commenced binding arbitration before Arbitrator Dick Corwin on June 8, 2018 (the "Arbitration") consistent with the SMA Rules.

74.     CISPRI asserted the following three claims against Furie as a basis for contending that Furie must indemnify CISPRI for the settlement with EH:

    (i)     CISPRI asserted a claim for breach of contract, alleging that Furie breached its contractual obligations under the Time Charter to provide OSV PERSEVERANCE a safe berth consistent with Section **6. Charterer to Provide (a)**. CISPRI claimed that Furie failed to provide CISPRI with appropriate operational plans and documents.

    (ii)     CISPRI asserted a claim against Furie for contractual indemnity arising under section **10 Liabilities and Indemnities (b)** of the Time Charter.

    (iii)     CISPRI asserted a claim for contribution against Furie for settling EH's claims, asserting that Furie was negligent in the design of its mooring system, Mooring Apparatus, and the size of the wire provided to ships for mooring.

75.     CISPRI and Furie were both represented by counsel, and participated in discovery, motion practice, and stipulations prior to the Arbitration Hearing.

### H. Furie Seeks Chapter 11 Bankruptcy Protection in Delaware.

76.     On August 9, 2019, Furie filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Delaware, Cause Number 19-11781 (LSS).

77.     On information and belief, Defendant Clingman & Hanger Management Associates, LLC is the duly appointed the Trustee for the Litigation Trust established by

Complaint for Declaratory Judgement
*Syndicates 1183, 1036, and 2007, et al. v. Furie, et al.* (Case No. 3:21-cv-00252-JMK)                    Page 14 of 28

Case 3:21-cv-00252-JMK   Document 1   Filed 11/17/21   Page 14 of 28

Furie's Chapter 11 plan.

78. The Bankruptcy Court entered an automatic stay consistent with 11 U.S.C. § 362. The Arbitration was stayed.

79. On February 21, 2020, the Bankruptcy Court lifted the stay for the limited purpose of permitting the Arbitrator to render a decision on two pending motions.

80. On June 11, 2020, the Bankruptcy Court lifted the 11 U.S.C. § 362 stay for the limited purpose to allow CISPRI to prosecute its claims in the Arbitration. A copy of the Bankruptcy Court's June 11, 2020 Order, Docket Entry 823, is attached as Exhibit 3 and incorporated by reference.

81. The June 11, 2020 Order of the Bankruptcy Court stated that the 11 U.S.C. § 362 stay was limited to allow CISPRI to collect any Arbitration Award, judgment, or settlement only from Furie's insurers:

> (ii)    subject to any and all defenses, permitting CISPRI to recover and collect any such award, judgment or settlement from the proceeds of Furie's insurance coverage including, without limitation and to the extent available, commercial general liability policy no. JGH2002114, and the correlated Umbrella policy no. JUH2001888 effective April 11, 2015 to April 11, 2016 with Gemini Insurance Company through J.H. Blades & Co., Inc., and **Debtors' charterer's legal liability policy no. MS-S4749, effective April 11, 2015 to April 11, 2016 with Underwriters at Lloyd's, London through McGriff, Seibels & Williams of Texas, Inc.** (for the avoidance of doubt, the Movant agrees not to seek an economic recovery with respect to the Claims from any of the Debtors, the Debtors' estates, the Reorganized Debtors, the Acquirer, or the Litigation Trust (each defined in the Plan));

[emphasis added].

82. The June 11, 2020 Order preserved all coverage defenses of Underwriters with regard to any and all claims for recovery against Underwriters by CISPRI to collect any settlement, judgment or award arising out of the Arbitration Award as follows:

> **ORDERED,** that **nothing** in this Order or the Plan **shall be deemed or construed to impact, impair, affect, determine, release, waive, modify, limit, or expand**:

Complaint for Declaratory Judgement
*Syndicates 1183, 1036, and 2007, et al. v. Furie, et al.* (Case No. 3:21-cv-00252-JMK)          Page 15 of 28

Case 3:21-cv-00252-JMK   Document 1   Filed 11/17/21   Page 15 of 28

(i).   **the availability of insurance coverage** with respect to the Arbitration Action;

(ii).   the **terms and conditions of any applicable insurance policies; any rights, remedies, defenses to coverage, and other defenses of any insurance carrier under or for any insurance policies (including the right of any insurance carrier to disclaim coverage), nor otherwise alter any insurance carrier's existing indemnity payment obligations**, or

(iii).   **Any rights of CISPRI with respect to any such insurance policies** or carriers; and it is further

**ORDERED,** that nothing in this Order shall affect the existing obligations of any Insurance carrier to pay defense fees or expenses or the existing arrangements for the payment thereof; and it is further

[emphasis added].

83.     CISPRI was ordered by the Bankruptcy Court to file a copy of the Order with the Arbitrator.

**I.     The Final Arbitration Award.**

84.     The Arbitrator ruled that CISPRI did not have the right to recover equitable or non-contractual indemnity from Furie for the injury to EH.  The ruling stated:

Any fault or liability of Furie for the injury to [EH] 'does not give rise to a claim for express contractual indemnity,' and **CISPRI may not recover indemnity in this arbitration from Furie based upon equitable/non-contractual bases**.

[emphasis added].

85.     On January 5, 2021, the Arbitrator ruled that Furie did not exercise reasonable care in connection with its installation of the Mooring Apparatus:

No genuine issue of fact exists that Furie did not exercise reasonable care in connection with its installation of the Mooring Apparatus which was in place on January 8, 2016, when its pendant Mooring Apparatus wire parted and that Furie was in breach of its duty to exercise reasonable care to any at risk of harm from the Mooring Apparatus.

Complaint for Declaratory Judgement
*Syndicates 1183, 1036, and 2007, et al. v. Furie, et al.* (Case No. 3:21-cv-00252-JMK)                Page 16 of 28

Case 3:21-cv-00252-JMK   Document 1   Filed 11/17/21   Page 16 of 28

86.     On August 9, 2021 the Arbitrator issued its final rulings and findings of fact. All Rulings of the Arbitrator are binding on all Defendants in this case based upon the doctrines of Issue Preclusion and Collateral Estoppel.

87.     A true and correct copy of the Arbitrator's Final Award is attached hereto as Exhibit 4 and is incorporated by reference.

88.     The Arbitrator held that neither CISPRI nor Furie breached any provision, obligation, or duty under the Time Charter.

89.     The Arbitrator held specifically that Furie did not breach the "**Safe Locations**" provision of **Section 6 CHARTERER to Provide (a)** of the Time Charter.

90.     The Arbitrator specifically held that Furie did not breach the **"Safe Berth"** provision of Section **6 CHARTERER to Provide (a)** of the Time Charter.  The Arbitrator held on page 30:

> Along the lines of discussion in the May 11, 2020 Ruling, the **Platform's support column with a padeye welded to it with the Mooring Apparatus hanging off it was not a "berth" as that term is used in 6(a) and as it is generally understood**.  No fendering, no arrangement to moor alongside, no system of mooring buoys to hold a vessel in position or any similar arrangement existed, any one of which might (depending upon all circumstances) cause a finding that a "berth" existed.  Clause 6(a) does not support CISPRI's claim.

[emphasis added].

91.     The Arbitrator specifically held that Furie did not breach **Section 6 CHARTERER to Provide (b)** by failing to provide a sling.  The Arbitrator held:

> **Clause 6 (b) of the Charterparty refers to slings in the context of their use for loading/unloading cargo and has no application to the Wire Rope Sling of the Moorage Apparatus**.

[emphasis added].

92.     The Arbitrator specifically held that Furie did not breach Section **6 CHARTERER to Provide (c)** "operational plans or documents which are necessary for the safe and efficient operation of the vessel."

This concerns operation of the vessel, not the Platform.  CISPRI's position

Complaint for Declaratory Judgement
*Syndicates 1183, 1036, and 2007, et al. v. Furie, et al.* (Case No. 3:21-cv-00252-JMK)          Page 17 of 28

Case 3:21-cv-00252-JMK   Document 1   Filed 11/17/21   Page 17 of 28

in the arbitration effectively is that during the operation to hook-up to the Mooring Apparatus the operation of vessel was safe and efficient while that of the Platform was not. **Clause 6 (c) does not support CISPRI's claim.**

[emphasis added] Furie has no liability as charterer for breach of Section 6 of the Time Charter.

93. Furie does not have any liability for the EH injury as charterer of the OSV PERSEVERANCE because the Arbitrator held that Furie did not breach any provision of the Time Charter.

94. The Arbitrator found that Furie's negligence as a Platform operator caused or contributed to EH's negligence.

Furie used the Mooring Apparatus without having design/engineering calculations as to the extent to which the Mooring Apparatus might safely be loaded and **did not provide to its Platform information or guidance as to circumstances** (for example weather, vessel tonnage/size, state of tide/current, sea state) in which it was appropriate and safe to use or not use the Mooring Apparatus. **And because the Wire Rope Mooring Apparatus is part of the Mooring Apparatus, Furie did not provide to its Platform information or guidance as to circumstances in which it was appropriate and safe to use or not use the Wire Rope Mooring Apparatus**.

\* \* \*

Furie installed the Mooring Apparatus with a "make-do" connection to the Padeye rather than in accord with an engineered arrangement which set up a situation where bending forces caused deformation of the Thimble – with all agreed that such forces reduce the strength of a wire. No engineer had a role in deciding the length of the Mooring Rope Sling or in determining and advising Furie of the strength of the Mooring Apparatus or in what circumstances of vessel size and conditions (current etc.) the Mooring Apparatus/Wire Rope Sling might safely be used having in mind margins of safety for use (and informative industry standards).

Furie's installation of the Mooring Apparatus created an unsafe condition concerning which it was unaware. **That put personnel on Furie's Platform in a situation where they did not know what vessels in what conditions might safely use the Mooring Apparatus – and negligently put at risk the safety of the Vessel's crew. The Platform personnel agreed that the Vessel use the Mooring Apparatus despite it being unsafe for the Vessel**

**to do so.** These negligent acts and failures put the Vessel in an unsafe situation in which to moor endangering those on the fore deck.

Furie's failures and negligence (and not of a momentary nature) proximately caused EH's injuries.

[emphasis added].

95.    The Arbitrator held that Furie was liable as a Platform owner and operator and allocated 65% of the fault for EH's injury to Furie.

96.    The Arbitrator ordered Furie to pay CISPRI $8,142,667.92 in contribution for payments made to EH, inclusive of awarded interest, fees, and costs (the "Arbitration Award").

97.    The Arbitrator held that CISPRI should be allocated 35% of the fault for EH's injury based upon CISPRI's fault and the fault of the captain of the OSV PERSEVERANCE.

98.    The Arbitrator held that Furie's liability and proportionate fault arose out of its Furie's operation of the Platform.

99.    The Arbitrator's Final Award did not hold that Furie had any liability as charterer under the Time Charter with CISPRI.

100.   The Arbitrator's findings that Furie did not have any liability for breach of the Time Charter, and that Furie's liability for EH's injuries arise out of the Platform are binding upon all Parties in this Court based upon the doctrines of Issue Preclusion and Collateral Estoppel.

101.   Defendants are not entitled to re-litigate or challenge the findings of the Arbitrator that (i) Furie did not have liability to CISPRI under the Time Charter, and that (ii) Furie's liability was solely as the Platform operator.

102.   There is no coverage under the CLL Policy for Furie's liabilities arising out of the operation of the Platform.

103.   The Platform was not a covered risk under the CLL Policy.

104.   The plain language and express terms of the CLL Policy limit coverage for

Complaint for Declaratory Judgement
*Syndicates 1183, 1036, and 2007, et al. v. Furie, et al.* (Case No. 3:21-cv-00252-JMK)          Page 19 of 28

Case 3:21-cv-00252-JMK   Document 1   Filed 11/17/21   Page 19 of 28

Furie's liabilities as a charterer of a vessel.

105. Underwriters did not receive a premium or other consideration from Furie to insure the Platform or Furie's liabilities as the Platform owner and operator.

106. The Platform is not covered by the CLL Policy.

107. Underwriters have no duty to indemnify Furie for the Arbitration Award because Furie's liability did not arise out of the Time Charter and was not covered under the CLL Policy.

## J. The Berkley National and Gemini Insurance Company Primary and Umbrella Policies.

108. Furie is a Named Insured under an Energy Commercial General Liability Insurance Policy Number JGH2002114 issued by Berkley National Insurance Company/Gemini Insurance Company (the "Berkley/Gemini Primary Policy"). The Berkley/Gemini Primary Policy was in effect from April 11, 2015 to April 11, 2016.

109. A true and correct copy of the Berkley/Gemini Primary Policy is attached hereto as Exhibit 5 and incorporated herein by reference.

110. The Berkley/Gemini Primary Policy provided primary coverage for CISPRI's operations and has a $1,000,000 per occurrence.

111. Berkley/Gemini also issued an Energy Commercial Umbrella Liability Policy No. JUH2001888 naming Furie as a Named Insured ("Gemini Umbrella Policy").

112. A true and correct copy of the Gemini Umbrella Policy is attached hereto as Exhibit 6 and incorporated herein by reference.

113. The Gemini Umbrella Policy was in effect from April 11, 2015 and terminated on April 11, 2016 and provided limits of liability of $10,000,000 per occurrence.

114. The Berkley/Gemini Primary Policy did not contain a choice of law provision. The Berkley/Gemini Primary Policy is governed by Alaska law.

115. The Berkley/Gemini Primary Policy contained the following exclusion:

B. Bodily Injury and Property Damage Liability Exclusions

Complaint for Declaratory Judgement
*Syndicates 1183, 1036, and 2007, et al. v. Furie, et al.* (Case No. 3:21-cv-00252-JMK)　　　　　Page 20 of 28

Case 3:21-cv-00252-JMK   Document 1   Filed 11/17/21   Page 20 of 28

In addition to those Exclusions listed above in Section VII.A., the following Exclusions apply to Section II.A. Bodily Injury and Property Damage Liability;

This policy does not apply to:

1. **Aircraft, Auto, or Watercraft:**

**BODILY INJURY** or **PROPERTY DAMAGE** arising out of the ownership, Maintenance, use of entrustment to others of any Aircraft, **AUTO**, or Watercraft owned or operated by, rented by, chartered by, or loaned to any **INSURED**. Use includes operation and **LOADING OR UNLOADING**.

This Exclusion applies even if the **CLAIMS** against any **INSURED** allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by that **INSURED**, if the **OCCURRENCE** which caused the **BODILY INJURY** or **PROPERTY DAMAGE** involved ownership, maintenance, use or entrustment to others of any Aircraft, **AUTO** or Watercraft that is owned or operated by, rented by, chartered by, or loaned to any **INSURED**.

Berkley/Gemini refer to this Policy exclusion as the "Watercraft Exclusion."

116.    On information and belief, Berkley/Gemini provided Furie with an unconditional defense of all claims CISPRI asserted against Furie in the Arbitration. Berkley/Gemini did not issue a reservation of rights reserving coverage defenses under the Berkley/Gemini Primary Policy or the Gemini Umbrella Policy to Furie, including but not limited to the Watercraft Exclusion.

117.    Berkley/Gemini now assert that (i) coverage does not exist under the Berkley/ Gemini Primary Policy or the Gemini Umbrella Policy for the Arbitration Award based on the Watercraft Exclusion; and (ii) that Berkley/Gemini have no duty to indemnify Furie for the Arbitration Award based upon the Watercraft Exclusion.

118.    Berkley/Gemini cannot now deny that coverage exists under the Berkley/Gemini Primary Policy or the Gemini Umbrella Policy because they defended the Arbitration unconditionally and without reservation of rights.

119.    Berkley/Gemini did not reserve their rights with regard to any Policy provisions of either policy, including but not limited to the Watercraft Exclusion, or reserve

Complaint for Declaratory Judgement
*Syndicates 1183, 1036, and 2007, et al. v. Furie, et al.* (Case No. 3:21-cv-00252-JMK)          Page 21 of 28

Case 3:21-cv-00252-JMK   Document 1   Filed 11/17/21   Page 21 of 28

any coverage defenses with respect to CISPRI's claims against Furie in the Arbitration.

120.    Berkley/Gemini are required to indemnify Furie because of the application of the doctrine of coverage by estoppel under Alaska law.

121.    The Arbitrator held that Furie was liable for the personal injury to EH based upon Furie's liability as the Platform owner and operator.

122.    The Arbitrator held that Furie did not breach the Time Charter and had no liability under the Time Charter.

123.    The Arbitrator specifically held that the fixed Platform was not a vessel.

124.    The Federal General Maritime Law clearly categorizes fixed platforms like the Julius R. Platform, as "land" or "islands" and black letter law holds that fixed platforms are not vessels as defined by 1 U.S.C. § 3.

125.    The Watercraft Exclusion does not apply to exclude coverage under the Berkley/Gemini Primary Policy or the Gemini Umbrella Policy for Furie's liability as a Platform owner and operator.

126.    The express language of the Offshore Worksite Endorsement of the Berkley/Gemini Primary Policy, Form EGL 1287 03 10, provides that work and production platforms are not considered Watercraft under the policy:

> For purposes of this policy, barges, mobile drilling and **production platforms**, drilling or workover barges, and other vessels while fixed in position, not in navigation, and **when being used as a work platform in connection with YOUR operations are not considered watercraft**.

[emphasis added]. The Furie Platform was a fixed gas production Platform and was not considered "Watercraft" under the plain language of the Berkley/Gemini Primary Policy. The Watercraft exclusion does not apply to exclude Furie's operations on the Julius R. Platform.

127.    Berkley/Gemini have liability under the Berkley/Gemini Primary Policy and the Gemini Umbrella Policy to indemnify Furie, as the Named Insured, in full for the Arbitration Award against Furie.

**K.**     **Berkley/Gemini and CISPRI Assert Demands Against Underwriters.**

128.    On September 8, 2020, counsel for the Berkley/Gemini Primary Policy, transmitted a demand to Underwriters' counsel, asserting that Underwriters had an obligation provide coverage under the CLL Policy to Furie for the CISPRI indemnity claims.

129.    Berkley/Gemini's counsel asserted that there was no coverage under either the Berkley/Gemini Primary Policy or the Gemini Umbrella Policy because coverage for CISPRI's claim was excluded under the Watercraft Exclusions contained in both policies.

130.    On August 11, 2021, CISPRI's counsel sent a demand letter to Underwriters, advising that CISPRI was in the process of reducing the Arbitration Award to judgment. CISPRI stated its intent to seek to collect and enforce the Arbitration Award against each of Furie's insurers, including Underwriters subscribing to the CLL Policy.

131.    On August 24, 2021, counsel representing the Berkley/Gemini Primary Policy transmitted a demand to Underwriters asserting that Underwriters are obligated under the terms and conditions of the CLL Policy to contribute $7,402,425.40 to satisfy the Arbitration Award.

132.    In the August 24, 2021 demand, counsel for the Berkley/Gemini Primary Policy asserted that there is no coverage under the Berkley/Gemini Primary Policy and no requirement to indemnify Furie because of the Watercraft Exclusion.

133.    Berkley/Gemini's counsel also asserts that even if the "Watercraft" exclusion in the Primary and Umbrella policies did not preclude coverage, the "other insurance" provisions of the Berkley/Gemini Primary Policy and the Underwriters' Policy require contribution on a 10:1 ratio based on the policies' respective limits.

134.    On October 13, 2021, counsel for Berkley/Gemini sent a letter to Furie's defense counsel asserting that the Berkley/Gemini Primary Policy and the Gemini Umbrella Policy did not provide coverage to Furie for its liability under the Arbitration Award because both the Primary and Umbrella policies contain a Watercraft Exclusion.

135.    Berkley/Gemini assert that Furie is entitled to full coverage under the CLL

Complaint for Declaratory Judgement
*Syndicates 1183, 1036, and 2007, et al. v. Furie, et al.* (Case No. 3:21-cv-00252-JMK)    Page 23 of 28

Case 3:21-cv-00252-JMK   Document 1   Filed 11/17/21   Page 23 of 28

Policy against the full Arbitration Award and the Confirmation of Judgment.

**L.    CISPRI Seeks to Confirm the Arbitration Award Against Furie.**

136.    On August 23, 2021, CISPRI filed a *Petition for Confirmation of Final Arbitration Award against Furie Operating Alaska, LLC* in the United States District Court, for the District of Alaska, Cause Number 3.21-cv-00194-SLG, Docket Entry 1.

137.    CISPRI notified Underwriters that CISPRI intends to collect the Confirmed Judgment directly from Underwriters, Gemini, and Berkley, as the insurers of Furie.

**M.    There is a Case and Controversy Between the Parties.**

138.    At all relevant times herein, CISPRI, Berkley, Furie, the Trustee, and Gemini have continuously demanded that Underwriters satisfy the Arbitration Award and the Judgment on the Arbitration Award under the CLL Policy.

139.    There is no coverage under Underwriter's CLL Policy to satisfy a judgment on the Arbitration Award because the liability of the Named Insured, Furie, did not arise out of Furie's liability as the charterer of the OSV PERSEVERANCE.

140.    There is a case and controversy between the Defendants and Plaintiff whether Underwriters' Policy provides coverage to Furie for the Arbitration Award and the Judgment on the Arbitration Award.

141.    Underwriters seek Declaratory Relief from this Court.

**IV.    CAUSE OF ACTION FOR DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201**

142.    Underwriters incorporate each and every allegation contained in Paragraphs 1 – 141 of their Complaint for Declaratory Judgment.

143.    A case and controversy exists between the parties. CLL Policy GU300630J, by its express terms, conditions and exclusions, does not provide coverage for the Arbitration Award or the claims asserted in the Arbitration.

144.    Underwriters have no duty under the CLL Policy to indemnify Furie arising out of the claims adjudicated in the Arbitration or awarded in the Arbitration Award because the claims arise out of facts and circumstances not covered under the CLL Policy.

Complaint for Declaratory Judgement
*Syndicates 1183, 1036, and 2007, et al. v. Furie, et al.* (Case No. 3:21-cv-00252-JMK)    Page 24 of 28

Case 3:21-cv-00252-JMK   Document 1   Filed 11/17/21   Page 24 of 28

## COUNT ONE

145.    Underwriters incorporate each and every allegation contained in Paragraphs 1 - 144 of their Complaint for Declaratory Judgment.

146.    Underwriters seek a Declaratory Judgment pursuant to 28 U.S.C. § 2201 holding that Underwriters have no duty to indemnify Furie under the CLL Policy for CISPRI's claims for contribution arising out of the Arbitration or the Arbitration Award, and that Furie's liability was based on Furie's operation of the Platform, and not in its capacity as a charterer. In particular, Underwriters seek the following adjudication:

      (i)      That the CLL Policy provides coverage to Furie only in its capacity as a charterer of the OSV PERSEVERANCE;

      (ii)      That Furie's liability as determined by the binding Arbitration arose out of its capacity as operator of the Platform and not in its capacity as a charterer;

      (iii)      That the Arbitration Award's finding that Furie's liability arose out of its operation of the Platform constitutes a final judgment binding on all parties;

      (iv)      That CISPRI is estopped from asserting that Furie's liability arose out of its capacity as a charterer;

      (v)      That there is no coverage under the CLL Policy for the CISPRI demands or the Arbitration Award; and

      (vi)      That Underwriters have no duty to indemnify Furie under the CLL Policy for any and all claims asserted by CISPRI for contribution arising out of the Arbitration Award.

## COUNT TWO

147.    Underwriters incorporate each and every allegation contained in Paragraphs 1 - 146 of their Complaint for Declaratory Judgment.

148.    Underwriters seek a Declaratory Judgment pursuant to 28 U.S.C. § 2201 holding that Underwriters have no duty to indemnify Furie under the CLL Policy arising

Complaint for Declaratory Judgement
*Syndicates 1183, 1036, and 2007, et al. v. Furie, et al.* (Case No. 3:21-cv-00252-JMK)      Page 25 of 28

Case 3:21-cv-00252-JMK   Document 1   Filed 11/17/21   Page 25 of 28

out CISPRI's claims for breach of contract, as the Arbitration Award found that Furie did not breach any provisions of the Time Charter. In particular, Underwriters seek the following adjudication:

      (i)    That the Arbitration Award's finding that Furie did not breach any provisions of the Time Charter constitutes a final judgment binding on all parties;

     (ii)    That CISPRI is estopped from asserting that Furie breached any provisions of the Time Charter Agreement; and

    (iii)    That Underwriters have no duty to indemnify Furie  under the terms and conditions of the CLL Policy for any and all claims for breach of contract arising out of the Arbitration Award.

## COUNT THREE

149.    Underwriters incorporate each and every allegation contained in Paragraphs 1 - 148 of their Complaint for Declaratory Judgment.

150.    Underwriters seek a Declaratory Judgment pursuant to 28 U.S.C. § 2201 holding that Underwriters have no duty to indemnify Furie arising out CISPRI's claims for contractual indemnity. In particular, Underwriters seek the following adjudication:

      (i)    That the Arbitration Award's finding that any fault or liability of Furie does not give rise to a claim for express contractual indemnity constitutes a final judgment binding on all parties;

     (ii)    That CISPRI is estopped by the doctrines of issue preclusion and collateral estoppel  from asserting that it is entitled to contractual indemnity from Furie; and

    (iii)    That Underwriters have no duty to indemnify Furie under the CLL Policy  for any and all claims for contractual indemnity arising out of the Arbitration Award.

## COUNT FOUR

151.    Underwriters incorporate each and every allegation contained in

Complaint for Declaratory Judgement
*Syndicates 1183, 1036, and 2007, et al. v. Furie, et al.* (Case No. 3:21-cv-00252-JMK)    Page 26 of 28

Case 3:21-cv-00252-JMK   Document 1   Filed 11/17/21   Page 26 of 28

Paragraphs 1 - 150 of their Complaint for Declaratory Judgment.

152. Underwriters seek a Declaratory Judgment pursuant to 28 U.S.C. § 2201 holding that Berkley/Gemini are not entitled to contribution from Underwriters in relation to the Arbitration Award. In particular, Underwriters seek the following adjudication:

(i) That the Berkley/Gemini Primary Policy and the Gemini Umbrella Policy provide coverage to Furie for the Arbitration Award;

(ii) That the Berkley/Gemini Primary Policy and Gemini Umbrella Policy "Aircraft, Auto, or Watercraft" exclusion does not preclude coverage under either policy for the Arbitration Award;

(iii) That Berkley/Gemini are estopped by the doctrines of issue preclusion and collateral estoppel from asserting that the Berkley/Gemini Primary Policy and Gemini Umbrella Policy "Aircraft, Auto, or Watercraft" precludes coverage for the Arbitration Award;

(iv) That the CLL Policy and the Berkley/Gemini Primary Policy and the Gemini Umbrella Policy "Other Insurance" provisions are not in conflict; and

(v) That Berkley/Gemini are not entitled to contribution from Underwriters subscribing to the CLL Policy for the Arbitration Award.

**PRAYER FOR RELIEF**

WHEREFORE, Underwriters pray for the following declaratory relief as follows:

A. For a declaratory judgment in favor of Underwriters FINDING as Follows:

(i) That the various provisions, endorsements, and exclusions contained in the CLL Policy do not provide coverage to Furie for the Arbitration Award, including but not limited to all claims by CISPRI;

(ii) That the Arbitration Award's finding that Furie's liability arose out of its operation of the Platform constitutes a final judgment binding on all parties;

Complaint for Declaratory Judgement
*Syndicates 1183, 1036, and 2007, et al. v. Furie, et al.* (Case No. 3:21-cv-00252-JMK)       Page 27 of 28

Case 3:21-cv-00252-JMK   Document 1   Filed 11/17/21   Page 27 of 28

(iii)   That Underwriters have no duty to indemnify Furie for any and all claims for contribution, contractual indemnity, or breach of contract arising out of the Arbitration Award;

(iv)   That Berkley/Gemini are not entitled to contribution from Underwriters for the Arbitration Award;

(v)   For an award of costs and attorneys' fees to Underwriters to the extent permitted by law; and

(vi)   For such other and further relief that this Court deems just and equitable.

DATED November 17, 2021

LANE POWELL PC
Attorneys for Plaintiffs


By   s/Brewster Jamieson
       Brewester Jamieson, ABA No. 8411122
       Katie Smith Matison, *pro hac vice*

s

Complaint for Declaratory Judgement
*Syndicates 1183, 1036, and 2007, et al. v. Furie, et al.* (Case No. 3:21-cv-00252-JMK)          Page 28 of 28

Case 3:21-cv-00252-JMK   Document 1   Filed 11/17/21   Page 28 of 28